UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 25-CR-244 (SLS) |
| | : | |
| SYDNEY LORI REID, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S OMNIBUS MOTION IN LIMINE**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits the following motion in limine. The Defendant in this case forcibly resisted, impeded and interfered with the orderly transfer of individuals from the custody of the Department of Corrections to the Immigration and Customs Enforcement Agency. While the facts are straightforward, there are foreseeable evidentiary issues that could jeopardize an efficient trial that adheres to binding legal precedent and the Federal Rules of Evidence. To ensure that trial proceeds within the bounds of relevant laws and rules, the Government submits this motion, through which it respectfully asks the Court to issue pretrial rulings prohibiting the Defendant from presenting irrelevant evidence or argument relating to the following: (A) the Government's earlier efforts to seek a felony indictment against the Defendant; (B) media coverage of this case; (C) the political views or affiliations of the victims; and (D) inadmissible portions of the Defendant's conversations with law enforcement following her arrest. The Government additionally requests that the Court (E) permit the Government to elicit evidence about why law enforcement agents were present at the scene and working to secure a perimeter.

**I.      RELEVANT BACKGROUND**

Defendant Sydney Reid is charged by Information with one count of forcibly resisting, impeding, and interfering with two officers of the United States while engaged in the performance

1

of their official duties, in violation of 18 U.S.C. § 111(a)(1). *See* ECF No. 17. The charge arises from an incident on July 22, 2025, when the Defendant interfered with an operation by agents with the Federal Bureau of Investigation ("FBI"), Homeland Security Investigations ("HSI"), and the United States Marshals Service ("USMS"), to take two individuals into custody upon their release from D.C. Department of Corrections custody at the D.C. Central Detention Facility.

The two individuals had been arrested on or about July 21, 2025. The first individual was charged with No Permit, in violation of D.C. Code § 50-1501.04(a)(1), while the second individual was charged with Carrying a Pistol Without a License, in violation of D.C. Code § 22-4504. After their arrest, agents learned that both individuals were present illegally in the United States. As a result, administrative warrants were prepared ordering their detention. Additionally, both individuals were suspected by law enforcement of being affiliated with the 18th Street Gang, a transnational criminal enterprise involved with homicides, kidnapping, witness intimidation, and firearms and narcotics trafficking,[1] and were wanted for questioning in relation to a homicide investigation. Pursuant to the warrants and the active investigation, agents sought to detain the individuals upon their release for the pending charge.

The individuals were presented and released on the charges in D.C. Superior Court. Their counsels requested that they be released pursuant to the procedure set forth in D.C. Code § 23-1321(d), and they were scheduled to be released from Central Detention Facility during a five-hour window on July 22, 2025. Agents therefore waited outside of the entrance used to discharge inmates from the jail.[2] During this wait, the Defendant approached law enforcement agents and video recorded the agents with a cell phone. Additionally, the Defendant photographed the make,

---

[1] *See United States v. Alvarado-Velasquez et al*, 23-cr-043-TNM.
[2] Under D.C. Code § 24-211.07(a)(3)(C), the federal immigration officers were prohibited from taking custody of the individuals inside of the facility.

model, and license plate of several law enforcement vehicles. At no time did agents attempt to arrest the Defendant based on these actions.

After agents had been waiting for multiple hours, the D.C. Department of Corrections began to release the individuals. Agents took custody of the first individual as he exited the facility; the individual was handcuffed and escorted down the entry stairs to a government vehicle that was parked nearby. During this process, an agent secured a perimeter for the transfer.

Several minutes later, the second individual was released by the Department of Corrections. Agents followed the same procedure used to transfer the first individual. However, during this transfer, the Defendant violated officers' orders by attempting to circumvent officers and obstruct the stairway that the agents used to escort the individual to the waiting vehicle. The Defendant tried to push past the perimeter agent, making physical contact with that agent. The Defendant's interference with the inmate transfer and contact with the agent forced the agent to move the Defendant away from the escort path to a nearby wall. As the agent restrained the Defendant near the wall, the Defendant resisted and struggled with the agent. A second agent came to assist to restrain the Defendant, during which agents asked the Defendant to calm down. The Defendant continued to resist and instead began raising up her leg as if preparing to strike the agents with her knee. A third agent came to assist. These three agents were able to handcuff the Defendant and place her under arrest.

During the struggle with the Defendant, she dropped her cell phone, which was recording audio and video. The video captured a portion of the Defendant's arrest and then the officers' recovery of the phone.[3] After officers recovered the phone, it continued recording audio for the

---

[3]   This occurred at timestamp two minutes and eighteen seconds.

next one hour and fifty-five minutes as the Defendant was transported and processed.[4] During that time, the Defendant and agents had several back-and-forth exchanges regarding the incident. At several points, one of the agents referred to the Defendant as "sweetie" and "sweetheart." Additionally, an agent can be overheard saying in substance, "I have to return to 1D and process this stupid female now . . . that I fucking don't want to process."

After the incident, Agent E.B. exchanged text messages regarding the incident in two separate text message conversations. In one of those conversations with Agent E.B.'s spouse, Agent E.B. stated: "I'm going to the attorneys [sic] office for a bystander that I tussled. Dinko arrested her for 'assault' ughhhh." In a second text message, Agent E.B. asked another agent, "Do you want the arrest EC separate from the "assault" or am I good to put it in together in one 302[?]" In a different text message thread with other law enforcement personnel after the incident, Agent E.B. referred to the Defendant as a "lib tard" and appeared to refer to hand scrapes suffered from the incident as "boo boos."

On July 23, 2025, the Defendant was charged by Complaint in United States District Court for the District of Columbia with one count of 18 U.S.C. § 111(a)(1) (felony). The Government presented evidence to three grand jury panels. Each panel returned a no true bill. Thereafter, the Government filed an Information charging the Defendant with a misdemeanor offense under 18 U.S.C. § 111(a)(1). Prior to the filing of the Information, Magistrate Judge G. Michael Harvey found probable cause for a felony violation of the statute at a preliminary hearing.

Trial is scheduled for October 14, 2025. Through this omnibus filing, and in compliance with the Court's scheduling order, the Government moves in limine as specified below.

---

[4] A copy of this file will be made available to the Court.

## II.        THE GOVERNMENT'S MOTIONS IN LIMINE

To convict Ms. Reid of the charged count, the Government must prove that: (1) the defendant resisted, opposed, impeded, intimidated, or interfered with an officer or an employee of the United States; (2) the defendant did such acts forcibly; (3) the defendant did such acts voluntarily and intentionally; and (4) the person resisted, opposed, impeded, intimidated, or interfered with was an officer or an employee of the United States who was then engaged in the performance of official duties or on account of the performance of official duties.  *See United States v. Arrington*, 309 F.3d 40, 44 (D.C. Cir. 2002); *see also United States v. Cunningham*, 509 F.2d 961, 963-64 (D.C. Cir. 1975) (listing cases in which defendants opposed federal agents with sufficient force to constitute a violation of 18 U.S.C. § 111).

While the facts and evidence the Government intends to present in this case are straightforward, the Government moves in limine to "narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions."  *Barnes v. D.C.*, 924 F. Supp. 2d 74, 78-79 (D.D.C. 2013) (citing *Graves v. D.C.*, 850 F. Supp. 2d 6, 10 (D.D.C. 2011) (quoting *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1070 (3d Cir. 1990))).  The Government also seeks pretrial resolution of certain foreseeable issues because objecting to and arguing about them during trial not only wastes time and irritates jurors but also risks the added prejudice of emphasizing inadmissible evidence or improper fact-assuming questions before the jury.  *See id.*  (referencing *Banks v. D.C.*, 551 A.2d 1304, 1310 (D.C. 1988); 75 Am. Jur. 2d Trial § 94 at 306-07 ("the mere asking of an improper question in the hearing of the jury may prove so prejudicial that, notwithstanding an instruction by the court to disregard the offensive matter, the moving party will be denied his right to a fair trial").

5

The foreseeable evidentiary issues involve inflammatory evidence or argument that could invite jury nullification.  It is well established that a defendant has no right to ask a jury to nullify the charges against him.  *See, e.g.*, *Sparf v. United States*, 156 U.S. 51, 101-02 (1895) ("We must hold firmly to the doctrine that in the courts of the United States it is the duty of juries in criminal cases to take the law from the court and apply that law to the facts as they find them to be from the evidence.").  And our Courts "have the duty to forestall or prevent such conduct" if it can be done without "interfering with guaranteed rights or the need to protect the secrecy of jury deliberations." *United States v. Wilkerson*, 966 F.3d 828, 835 (D.C. Cir. 2020) (citing *United States v. Thomas*, 116 F.3d 606, 614 (2d Cir. 1997)).

The D.C. Circuit has made clear:

> A jury has no more "right" to find a "guilty" defendant "not guilty" than it has to find a "not guilty" defendant "guilty," and the fact that the former cannot be corrected by a court, while the latter can be, does not create a right out of the power to misapply the law. <u>Such verdicts are lawless, a denial of due process and constitute an exercise of erroneously seized power</u>.

*United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983) (emphasis added).  Evidence that only serves to support a jury nullification argument or verdict has no relevance to guilt or innocence.  *See United States v. Gorham*, 523 F.2d 1088, 1097–98 (D.C. Cir. 1975).  As such, the Government respectfully requests that defense counsel be precluded from asking questions, or making argument, regarding any of the following topics.

### A. The Court Should Preclude the Defendant from Presenting Evidence or Argument Related to the Government Initially Charging a Felony Violation of 18 U.S.C. § 111.

The Court should preclude the Defendant from referencing the Government's previous efforts to charge the Defendant with a felony violation of 18 U.S.C. § 111 and the grand jury's refusal to indict. Evidence or argument relating to this procedural background is inadmissible

6

hearsay, irrelevant, and, to the extent there is any probative value, this value is substantially outweighed by the risk of unfair prejudice and misleading the jury.

Looking first to the Government's charging decisions, "so long as the prosecutor has probable cause, the decision whether or not to prosecute and what charge to file or bring before a grand jury, generally rests entirely in the [prosecutor's] discretion." *United States v. Howell*, 17 F.4th 673, 687 (6th Cir. 2021). This decision is based not only on the facts of the case, but also on information that would otherwise be inadmissible such as a defendant's criminal history and public policy concerns. If the Defendant were permitted to discuss the charging decisions in this case, the Government should be able to rebut any defense allegations to explain the decision-making process – thereby inviting the possibility of an irrelevant and unduly prejudicial trial within a trial.

Likewise, the grand jury's prior determinations are also inadmissible. At the outset of every criminal trial, the Court instructs the petit jury that an indictment or information is just the formal way of charging a person, is not evidence, and must not be considered as any evidence of the guilt of the defendant. *See* Red Book Criminal Jury Instruction for the District of Columbia, Instruction 1.102 (Preliminary Instruction Before Trial); *see also United States v. Fields,* 483 F.3d 313, 354 (5th Cir. 2007) (noting the court "correctly required that it perform that task independently from the indictment"). It logically follows that a grand jury's decision not to indict is also not evidence of anything and should therefore be precluded from evidence or argument. The reasons for this are many. First, any evidence relating to the grand jury's determination is an unsworn out-of-court statement by grand the jurors offered for the truth. Moreover, of all the participants in the criminal justice system, grand juries are uniquely unaccountable; grand jurors are insulated from public oversight in ways that no other government instrumentality is. *United States v. Navarro-Vargas*, 408 F.3d 1184, 1201 (9th Cir. 2005). For example, the grand jury has no obligation to prepare a

presentment or to return an indictment drafted by the prosecutor, and it may determine not only whether probable cause exists, but also whether to "charge a greater offense or a lesser offense and numerous counts or a single count." *Id. (*citing *Vasquez v. Hillery,* 474 U.S. 254, 263, (1986)). And, significantly, the grand jury may refuse to return an indictment even "where a conviction can be obtained." *Id.* (citing *United States v. Ciambrone,* 601 F.2d 616, 629 (2d Cir.1979) (Friendly, J., dissenting)). Likewise, the "grand jury's no-bill is a decision not to charge the accused with a *particular offense*, not a judgment that *no unlawful conduct whatsoever* occurred." *United States v. Gipson*, 746 F. App'x 364, 366 (5th Cir. 2018) (emphasis in original).

Indeed, it is this very independence of the grand jury that makes any discussion of its decision to no bill unduly prejudicial. *See Navarro-Vargas*, 408 F.3d at 1201-02 (noting grand jurors can refuse to indict based on perceived government overreach, but also by taking into account the race or gender of the accused or the victim). For all of these reasons, the Defendant should be precluded from referencing the grand jury's prior no bills in evidence or argument in this case.

### B. The Court Should Preclude the Defendant from Presenting Evidence or Argument Referencing the Media Coverage of this Case.

This case has been the subject of media coverage by several news outlets.[5] That coverage has included information about the underlying factual events as well as the grand juries' refusal to indict. *Id.* The Court should preclude the defendant from admitting evidence or making argument about any such media coverage, as it is hearsay, irrelevant, and unduly prejudicial.[6]

---

[5]   *See, e.g.*, Alan Feuer and Minho Kim, *Prosecutors Fail 3 Times to Charge Woman With Felony Assault of F.B.I. Agent in D.C.*, N.Y. TIMES, Aug. 25, 2025, https://www.nytimes.com/2025/08/25/us/politics/fbi-agent-assault-dc.html; Salvador Rizzo and Michael Laris, *D.C. judges and grand jurors push back on Trump policing surge*, WASHINGTON POST, Aug. 27, 2025, https://www.washingtonpost.com/dc-md-va/2025/08/27/trump-crime-surge-court-cases/.

[6]   This argument applies with equal force to any media statements made by Immigration and

Media coverage of cases is generally inadmissible at trial. *See, e.g., Dallas County v. Commercial Union Assur. Co.*, 286 F.2d 388, 391-92 (5th Cir. 1961) ("Of course, a newspaper article is hearsay, and in almost all circumstances is inadmissible."); *Williams v. Baker*, No. 15CV0402, 2016 WL 1274018, at *4 (W.D. Pa. Mar. 31, 2016) (ruling media reports could be offered "solely for the purpose of showing that news articles were published about the . . . incident" and not to prove the truth of the matters asserted therein). Accordingly, any attempt by the Defendant to introduce content from news reports to establish facts of the incident involving her would be inadmissible hearsay. Any attempt by the defense to introduce news reports to establish the Government's initial charging determination or efforts before the grand jury would – as argued in section A above – be inadmissible as irrelevant hearsay that is unduly prejudicial to the Government. The evidence at trial should be limited to witness testimony and admitted exhibits, and any attempt to introduce past media coverage should be precluded.

### C. The Court Should Preclude the Defendant from Presenting Evidence or Argument Related to the Political Affiliations, Beliefs, Opinions, or Policy Positions of the Law Enforcement Officers.

The Court should preclude the Defendant from admitting evidence or making argument about the law enforcement officers' and agents' political affiliations, beliefs, opinions, or policy positions. It is simply not relevant to the jury's determination. Any attempt to introduce evidence or argument on these issues is immaterial and solely for the purpose of jury nullification. Evidence or argument regarding the Defendant's beliefs, opinions, or policy positions is likewise

---

Customs Enforcement and other government agencies, which would not be admissible as adoptive admissions. *See United States v. Harris*, 834 A.2d 106, 121 (noting that statements made by other government employees, and not the Assistant United States Attorney, are not adoptive admissions); *United States v. Warren*, 42 F.3d 647, 656 (D.C. Cir. 1994) (holding only sworn statements of government agents presented to a court are party admissions, but unsworn statements during an investigation are not treated as such.)

impermissible except to the extent that the Defendant's views may be relevant to the Government establishing her motive.

The Court "'retains broad discretion to control cross-examination'" and may prohibit the defendant from presenting inadmissible evidence or argument. *United States v. Sutton*, 2024 WL 278070, at **11-12 (slip op.) (D.D.C. Jan. 25, 2024) (quoting *United States v. Hemphill*, 514 F.3d 1350, 1360 (D.C. Cir. 2008)); *United States v. Anderson*, 881 F.3d 1128, 1138-39 (D.C. Cir. 1989)) (Friedman, J.). This is true, because "[a]lthough criminal defendants have a right to present a defense, courts are not required to permit defendants to present to the jury evidence that is not admissible because it is not relevant or probative of a fact of consequence." *Id.* at *11 (citing *United States v. Yousef*, 327 F.3d 56, 128 (2d Cir. 2003); *United States v. Libby*, 467 F. Supp. 2d 20, 27 (D.D.C. 2007) (Walton, J.)).

The victims' political beliefs, affiliations, and policy positions are not relevant to any of the elements of the offense. Any examination that probes into political opinions or bias would be improper. *See United States v. Biden*, 2024 WL 3892623, at *2 (D.Del. Jun. 2, 2024) (ruling that "submission regarding any witnesses' political bias are excluded from introduction or admission at trial because such questioning, testimony, evidence or argument is not relevant, is unduly prejudicial and invites nullification."); *Beyene v. Hilton Hotels Corp.*, 2012 WL 13214662, at *3 (D.D.C. Nov. 13, 2012) (excluding references to religion or national origin where the claim was negligent retention after the plaintiff-employee reported co-workers for making threats against then-President George W. Bush because, under Fed. R. Evid. 403, such evidence would have little probative value and a high likelihood of being "potentially inflammatory"). Only evidence and argument relevant to the elements of the charged offenses can be properly admitted at trial.

Likewise, E.B.'s statements in text messages about the assault and injuries are opinions that should be precluded from cross-examination. Taking Agent E.B.'s statements in sequence, the text messages stating, "I'm going to the attorneys [sic] office for a bystander that I tussled. Dinko arrested her for 'assault' ughhhh," and, "Do you want the arrest EC separate from the "assault" or am I good to put it in together in one 302," are inadmissible for several reasons. First, they are hearsay. Second, the agent's use of quotation marks to modify the word assault is irrelevant and, under Rule 403, to the extent there is any probative value, it is substantially outweighed by the danger of confusing the issues and misleading the jury by inviting argument over whether the Defendant's conduct caused assaultive, physical harm to Agent E.B. The Government's theory of this case, as alleged in the Information, is that the Defendant "forcibly resist[ed], impede[d], and interfere[d] with" Agent E.B. and Officer V.L." The Defendant is not charged with assaulting those officers, and the Government does not plan on arguing as such. Moreover, Agent E.B.'s opinion as to whether the Defendant's conduct constituted an assault is a legal conclusion that is the sole province of the jury. *See* FED.R.EVID. 704; *United States v. Baez*, 695 F.Supp.3d 94 (D.D.C. 2023) (testimony consisting of legal conclusions is impermissible because such testimony may improperly influence the decision of the trier of fact – the jury…") (citations omitted).[7]

---

[7] The Government would also note that this communication was made by Agent E.B. on a personal device to Agent E.B.'s spouse. As a result, the statements themselves may be inadmissible under the confidential communications privilege. FED.R.EVID. 501. The confidential communications privilege "exists to insure that spouses generally, prior to any involvement in criminal activity or a trial, feel free to communicate their deepest feelings to each other without fear of eventual exposure in a court of law." *United States v. Byrd*, 750 F.2d 585, 590 (7th Cir. 1984). The privilege "seeks to protect the institution of marriage generally as a haven for confidential communications." *Id.* at 592. Since marital communications are presumptively confidential, the party seeking to defeat the privilege must overcome the presumption. *In re Grand Jury Investigation*, 603 F.2d 786, 788 (9th Cir. 1979).

11

Similarly, Agent E.B.'s out of court statement referring to the hand scrapes as "boo boos" is also inadmissible. Once again, this statement is hearsay. Moreover, the statement is irrelevant. The Government intends to admit a photograph of the scrape to Agent E.B.'s hand,[8] which will allow the jury to decide for itself the extent of the injury. Additionally, if the Court finds there is probative value to these statements, this value is substantially outweighed by the risk of undue prejudice.[9]

Finally, Agent E.B.'s reference to the Defendant as a "lib tard" in a text message discussion about this incident on her personal phone should also be precluded because it is irrelevant and highly inflammatory. A victim or law enforcement officer's opinion about a perpetrator expressed after their interaction is irrelevant to establishing whether the defendant's conduct on the date of the incident constituted a crime. Agent E.B.'s characterization of the defendant offers no probative value and would instead be offered simply to inflame the jurors.

### D. The Court Should Preclude the Defendant from Presenting Irrelevant Evidence or Argument About Conversations between the Defendant and Law Enforcement Officers Captured by the Defendant's Cell Phone After Her Arrest.

The Government also moves to preclude the Defendant from eliciting statements from the interactions between the Defendant and agents after the recovery of her cell phone, occurring two minutes and eighteen seconds into the audio recording. Here, the video is only relevant insofar as

---

[8] This is proposed Government Exhibit 9.
[9] The Government anticipates Agent E.B. would testify that she suffered a scrape to her hand while restraining the Defendant. The Government would object to evidence from the text message being admitted as impeachment evidence as it is not inconsistent with the witness's anticipated testimony. "[B]efore a party may impeach a witness with a prior inconsistent statement, the party must first establish that a witness's statement is actually inconsistent with, although not necessarily 'diametrically opposed,' to the prior statement." *United States v. Cody*, 114 F.3d 772, 776-77 (8th Cir 1997) (quoting *United States v. Dennis*, 625 F.2d 782, 795 (8th Cir. 1980)); s*ee also United States v. Smith*, 831 F.3d 793, 800-01 (7th Cir. 2016).

it depicts the Defendant's actions outside the jail leading up to and during the crime of resisting, impeding, and interfering with federal law enforcement officers. The statements made by the Defendant and law enforcement officers after the assault are inadmissible hearsay.[10] The other portions of the video are not admissible under the completeness doctrine. *See* FED. R. EVID. 401. Indeed, "[t]he completeness doctrine does not . . . require the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages." *United States v. Jackson*, 180 F.3d 55, 73 (2d Cir.), *on reh'g*, 196 F.3d 383 (2d Cir. 1999).

Nor should the Defendant be permitted to cross-examine the agents about statements from the cell phone video in which an agent referred to the Defendant as "sweetie" or "sweetheart," or in which an agent is believed to refer to the Defendant as a "stupid female." These comments were made in the hours after the offense was committed and are not relevant to any conduct in this case or to establishing bias. Meanwhile, permitting questioning regarding the use of this language would only serve to inflame the passions of the jury. As a result, admission of or cross-examination into these portions of the video should be precluded.

### E. The Court Should Permit the Government to Present Evidence About Why Law Enforcement Was Present at the Scene and Working to Secure a Perimeter.

The Court should permit the Government to present evidence that the federal agents were present at the D.C. Central Detention Facility to detain two individuals on administrative warrants for immigration violations, that those two individuals were believed to be affiliated with the 18th Street Gang, and were wanted for questioning for a homicide. Section 111 does not define "official duties," and there is no bright-line test defining what constitutes official duties. *United States v.*

---

[10] The Government is not seeking to admit any of the Defendant's statements after two minutes and eighteen seconds into the video, at which point the Defendant has been arrested.

*Hoy*, 137 F.3d 726, 729 (2d Cir. 1998). Generally, the question is whether the federal agent was acting within the scope of what that agent is employed to do, or if it was a "personal frolic." *United States v. Paitsel,* 2025 WL 2180059, at *11 (D.C. Cir. Aug. 1, 2025) (quoting other sources). The determination is fact specific. *United States v. Clemons*, 32 F.3d 1504, 1508 (11th Cir. 1994) (surveying cases).[11] Though some of the agents in this case may have been engaging in an activity that did not fall under their routine job purview, a law enforcement officer's original job description is not the touchstone of whether the officer was performing a function covered by the job description. *Paitsel,* at *12, (citing *United States v. Street,* 66 F.3d 969, 978 (8th Cir. 1995)). In fact, every circuit to address the scope of official duties has found that it extends beyond an

---

[11]    In *United States v. Clemons*, 32 F.3d at 1507-08, the United States Court of Appeals for the Eleventh Circuit noted the following examples:

> In *United States v. Stephenson,* 708 F.2d 580 (11th Cir. 1983), for instance, an FBI agent was assaulted and robbed of her purse as she walked from her car toward the FBI Building. Her purse contained her service revolver, an FBI badge and identification. Reasoning that the agent was "on her way to report for work at the FBI office," and that, in struggling with her assailant, "she was properly attempting to prevent theft of federal property," *id.* at 581, we concluded that the evidence was sufficient for a trier of fact to find that the agent was engaged in the performance of her official duties. Similarly, in *United States v. Hoffer,* 869 F.2d 123 (2d Cir. 1989), a DEA agent had completed her assigned surveillance but remained "on call" when she was assaulted near her car. The court pointed to the fact that the agent was returning from her assignment; that she was in a government-owned vehicle which she was duty-bound to protect; and that she was "on call" for further assignment in support of its determination that the agent was discharging her official mission at the time of the assault. *See id.* at 126. *See also, United States v. Streich,* 759 F.2d 579 (7th Cir. 1985) (where IRS agents were in course of repossessing appellant's vehicle when assaulted, agents held to be in course of official duties); *United States v. Boone,* 738 F.2d 763 (6th Cir. 1984) (federal judge assaulted while walking to the federal courthouse on a Sunday evening in order to conduct legal research was engaged in her official duties); *United States v. Lopez,* 710 F.2d 1071 (5th Cir. 1983) (federal agent assaulted while detaining a state-charged suspect held to be performing official duties); *United States v. Reid,* 517 F.2d 953 (2d Cir. 1975) (where DEA agent was obligated to take action to prevent a violation of state law even when off-duty, agent shot while attempting to stop a robbery was engaged in his official duties).

official's particular job responsibilities. *Id.* As a result, the Court should permit the Government to elicit evidence of the agents' purpose for being present at the D.C. Central Detention Facility on July 22, 2025, leading up to the Defendant's arrest.

Moreover, the Court should permit the Government to elicit evidence regarding the two individuals' pending charges, gang affiliation, and that they were wanted for questioning for a homicide. This information would not be offered for the truth of the matter asserted, but for the effect on the listener – namely, the law enforcement agents who were present – to explain the tactics they employed. This information provides crucial context to the jury to explain the number of agents present and the need for the agents to maintain a perimeter as they took the two individuals into custody.

Under Fed. R. Evid. 403, the risk of undue prejudice to the Defendant is minimal. The Defendant is neither alleged to have any affiliation with these individuals, nor is she alleged to have engaged in the charged conduct on these individuals' behalf. Furthermore, to guard against an impermissible inference, the Court may issue an instruction to the jury to ensure the jury considers the evidence for its proper purpose. *See United States v. Martin*, 2025 WL 1905645 at *12 (D.D.C. 2025).

### III.  CONCLUSION

For the foregoing reasons—and to ensure an orderly trial that proceeds within the bounds of relevant legal precedents, principles, and rules—the Government moves in limine and respectfully requests that the Court prohibit the defendant from presenting irrelevant evidence or argument relating to: (A) the Government's earlier efforts to seek a felony indictment against the Defendant; (B) media coverage of this case; (C) the political views or affiliations of the victims; and (D) inadmissible portions of the Defendant's conversations with law enforcement following her arrest.  Additionally, the Government should be permitted to (E) elicit evidence about why law enforcement agents were present at the scene and working to secure a perimeter.

Respectfully Submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY
NY Bar Number 1387455

By: *Travis Wolf*
Travis Wolf
Christine Macey
Assistant United States Attorneys
N.Y. Bar No. 5483243 (Wolf)
D.C. Bar No. 1010730 (Macey)
601 D St, NW
Washington, D.C. 20530
Travis.Wolf@usdoj.gov
Christine.Macey@usdoj.gov
(202) 252-7803 (Wolf)
(202) 252-7058 (Macey)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| **v.** : | Case No. 25-CR-244 (SLS) |
| : | |
| **SYDNEY LORI REID,** : | |
| : | |
| Defendant. : | |

### **ORDER**

Upon consideration of the Government's Omnibus Motion *in Limine*, and for good cause shown, it is hereby

**ORDERED** that the government's motion is GRANTED; it is further

**ORDERED** that the defendant is prohibited from presenting evidence or argument related to: the Government's earlier efforts to seek a felony indictment against the Defendant; media coverage of this case; the political views or affiliations of the victims; and inadmissible portions of the Defendant's conversations with law enforcement following her arrest; and it is further

**ORDERED** that the Government is permitted to elicit evidence about why law enforcement agents were present at the scene on July 22, 2025 and working to secure a perimeter.

**SO ORDERED.**

_____
SPARKLE L. SOOKNANAN
United States District Judge

Date: