UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA          :

      v.                              :          25-CR-244-SLS

SIDNEY LORI REID                  :

**DEFENDANT'S RESPONSE TO THE GOVERNMENT'S MOTION IN LIMINE**

Ms. Sidney Reid, through undersigned counsel, respectfully files this response to the government's motion in limine, ECF 21. In its motion, the government asks that the Court to (A) preclude Ms. Reid from referring to the government's failed attempts to secure an indictment in this case; (B) preclude Ms. Reid from presenting evidence or argument regarding the media coverage of this case; (C) preclude Ms. Reid from eliciting testimony about the involved agents' opinions or beliefs; (D) preclude Ms. Reid from presenting irrelevant evidence; and (E) allow the government to elicit testimony about why the agents were at the scene of the incident. The Court should deny the government's requests.

## ARGUMENT

**I.      The government's request regarding its three failures to secure an indictment**

The government first requests that the Court prohibit Ms. Reid from presenting evidence about the government's attempts to secure a felony indictment against her. Defense counsel will not seek to introduce affirmative evidence that the grand jury thrice rejected the government's attempts to secure an indictment in this case but of course reserves the right to use grand jury materials to impeach witnesses when appropriate.

The government also requests that the Court preclude Ms. Reid from "introduce[ing] content from news reports to establish facts of the incident involving her" as such evidence would be inadmissible hearsay. ECF 21. The defense is unaware of any media reports that could be used

1

as substantive evidence in Ms. Reid's case-in-chief. That said, because defense counsel is reviewing discovery, continues to investigate this case, and is not yet apprised of the government's witness list, Ms. Reid reserves the right to use any statements made by government witnesses in the media at trial. In addition, the government does not raise a live, concrete dispute at this juncture. *See United States v. All Assets Held at Bank Julius*, No. CV 04-798 (PLF), 2020 WL 13997255, at *1 (D.D.C. June 17, 2020) (adopting report and recommendation of magistrate judge declining to resolve "premature" discovery "squabble" and instructing the parties to raise a "concrete dispute at the appropriate time); *United States v. W. Elec. Co.*, 690 F. Supp. 22, 26 (D.D.C. 1988) (declining to rule on a hypothetical issue as "premature and in contravention of the judicial policy against deciding controversies not presented in a concrete factual setting"). The Court should therefore deny this request as premature and address the issue should it arise at trial.

## II.   The Court should deny the government's request regarding the agents' bias

The government attempts to couch its witnesses' biases as "political affiliations, opinions and beliefs" in order to convince the Court to curtail Ms. Reid's Sixth Amendment rights to confront the witnesses against her.  Advancing an inordinately narrow view of relevant cross-examination, the government implores the Court to restrict the defense's questions to those relevant only to the elements of the offense.  The government's suggestions invite constitutional error and ask the Court to ignore foundational elements of criminal law.

The government fundamentally misunderstands the standard for the admissibility of evidence, and the Court should deny its request. Questions about the witness' perspective are permissible because they are relevant and are necessary to demonstrate the witness' biases. "Evidence is relevant and therefore admissible if it has any tendency to make a fact of consequence more or less likely." *United States v. Beltran-Garcia*, 338 Fed. Appx. 765, 771 (10th Cir. 2009) (citing Fed. R. Evid. 401–02). "A successful showing of bias on the part of a witness would have

a tendency to make the facts to which he testified less probable in the eyes of the jury than it would be without such testimony." *United States v. Abel*, 469 U.S. 45, 51 (1984). This is true to a greater degree where, as here, a jury must determine whether an officer's version of events occurred and that determination goes to the heart of a defendant's culpability.

Bias describes "the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor or against a party" and "may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest." *Abel*, 469 U.S. at 52. The Supreme Court explained the importance of exploring bias in cross-examination in the seminal case of *Davis v. Alaska:*

> "Our cases construing the [confrontation] clause hold that a primary interest secured by it is the right of cross-examination." *Douglas* v. *Alabama*, 380 U.S. 415, 418 (1965). Professor Wigmore stated: "The main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination*. The opponent demands confrontation, not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross-examination, which cannot be had except by the direct and personal putting of questions and obtaining immediate answers." 5 J. Wigmore, Evidence § 1395, p. 123 (3d ed. 1940). (Emphasis in original.)
>
> Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, *i. e.*, discredit, the witness . . . . A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.' 3A J.Wigmore, Evidence s 940, p. 775 (Chadbourn rev. 1970). [The Court has] recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionality protected right of cross-examination.

*Davis*, 415 U.S. 308, 315–17 (citing *Greene v. McElroy*, 360 U.S. 474, 496 (1959)).

Even extrinsic evidence to show bias is admissible so long as it does not run afoul of

Federal Rule of Evidence 402 and 403. *See United States v. Robinson*, 530 F.2d 1076, 1079–80 (D.C. Cir. 1976) ("In certain situations," "external facts from which may be inferred a specific bias, or motive to testify in a particular way, are admissible to impeach a witness" because bias "is never classified as a collateral matter which lies beyond the scope of [inquiry], nor as a matter on which an examiner is required to take a witness's answer."), *United States v. Slough*, 22 F. Supp. 3d 29, 33 (D.D.C. 2014) (citing *United States v. Lindemann*, 85 F.3d 1232 (7th Cir. 1996)). Rule 402 provides that relevant evidence is admissible unless the Constitution, a statute, the Rules, or Supreme Court precedent provides otherwise. And Rule 403 permits courts to "exclude relevant evidence if its probative value is substantially outweighed by danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

The government argues that its officers' political beliefs and their use of derogatory language about Ms. Reid is "simply not relevant to the jury's determination of guilt" in this case, and therefore the defense should be precluded from presenting evidence and argument on these points. Specifically, the government identifies a number of statements in FBI Agent Eugenia Bates's text messages "about the assaults and injuries [that] are opinions and should be precluded from cross-examination." ECF 21 at 11. Those statements are:

- "I'm going to the attorneys [sic] office for a bystander that I tussled. Dinko arrested her for 'assault' ughhh";[1]

- "Do you want the arrest EC separate from the 'assault' or am I good to put it in together in

---

[1] With respect to this statement, the government argues that because Agent Bates made it to her spouse on her personal device, the statement is covered by the marital communications privilege. ECF 11 n. 7. Even if that were so, that privilege was waived when Agent Bates disclosed the message to an individual outside of the marital relationship. *See, e.g.*, *United States v. Brock*, 724 F.3d 817, 822 (7th Cir. 2013) (noting that so long as the holder of marital privilege "intends to disclose the privileged material, even without realizing the impact of the disclosure on the privilege, then there is a waiver").

   one 302";

- Agent Bates's reference to the scratch on her hand as "boo boos";[2]
- Agent Bates's discussion of the incident and calling Ms. Reid as a "lib tard";

All of these statements are relevant to the offense for which Ms. Reid is charged or, are, at minimum, impeachment evidence. Impeachment evidence, like exculpatory evidence "falls within the *Brady* [*v. Maryland*, 373 U.S. 83, 87 (1963)] rule." *United States v. Bagley*, 473 U.S. 667, 676 (1985). In making that declaration, the Supreme Court, reasoned that impeachment evidence "is 'evidence favorable to an accused,' so that, if disclosed and used effectively, it may make the difference between conviction and acquittal." *Id.* (quoting *Brady*, 373 U.S. at 87). *Cf. Napue v. Illinois*, 360 U.S. 264, 269 (1959) ("The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend.").

   Nor are the agents' statements hearsay. Hearsay is an out of court statement offered "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Because the agents' statements would not be used for the truth of the matters asserted, the statements are not hearsay. For example, Ms. Reid would not be using the language Agent Bates used to refer to her to prove that Ms. Reid is a "lib tard" but to show Agent Bates has a personal bias and a motive to lie.

---

[2] The government objects to Agent Bates's message referring to her scratch as "boo boos" because it is "not inconsistent with [her] anticipated testimony." ECF 21. Because Agent Bates has not yet testified, this request is premature. But the law is not blind to sarcasm. And that Agent Bates referred to her hand as having "boo boos on it!" to another person and followed that statement up with "I sacrificed life and limb for the mission. I think it's worth a trump coin" may appear inconsistent to a reasonable juror. In any event, the government's optimistic interpretation does not render the statement inadmissible.

**III.     The Court should also deny the government's request as to statements made after Ms. Reid's arrest**

After Ms. Reid was arrested, her cellphone continued to record her transport and detention by the arresting agents for almost two hours. In that time, agents made many statements that go not only to their credibility and should be admitted for the reasons laid out in Section II, *infra*, but also because the evidence is plainly relevant.

As stated above, evidence is relevant when it has any tendency to make a fact of consequence more or less likely. Ms. Reid's state of mind is relevant in this case, and the conversation revolves around Ms. Reid's state of mind. For example, Ms. Reid states that the woman officer "scared the shit out of me."

The agents' biases and motives for arresting Ms. Reid are also relevant in this case. While Magistrate Judge Harvey presided over the preliminary hearing, he observed, that the defense may successfully contend that Ms. Reid was arrested because the officers were irritated that she was not minding her business. To this point, an officer states, "you should have stayed home. Stupid mistake. You should have stayed home." To the extent that counsel intends to elicit any out-of-court statements for the truth of the matter asserted, counsel will lay the proper foundation for either an excited utterance, a present sense impression, or another hearsay exception. To the extent the prosecution has identified a hearsay statement that it finds objectionable, it should identify them, rather than rely upon the defense to make objections for them.

**IV.     The Court should limit evidence regarding why the agents were at the D.C. Jail**

The defense does not object to the government admitting evidence that the agents were at D.C. Jail to arrest noncitizens on administrative warrants. But presenting evidence that the individuals who were arrested "were believed to be affiliated with the 18th Street Gang, and were wanted for questioning in a homicide," ECF 21 at 13, would be substantially more prejudicial than

probative. To begin, these agents were not necessary to question these individuals for a homicide. There is nothing stopping these individuals from being questioned at the jail by detectives. To be sure, detectives visit the jail regularly to question witnesses and suspects or to take fingerprints or buccal swabs. And eliciting such information would invite a mini-trial that would have next to no relevance to the matters of consequence to the jury.

Who the arrested individuals are makes it no more or less likely that Ms. Reid resisted, impeded, or interfered with the agents. In addition, there is *no* evidence that Ms. Reid has any gang affiliations or knew who the individuals were, much less the specific reasons the government was seeking to detain them at the exit of D.C. Jail. But the government attempts to use inflammatory and unproven allegations against these two men as a way to muddy the waters and distract and confuse the jury. Because there is no probative value in allowing evidence of the arrestees' alleged gang affiliations, the danger of unfair prejudice and misleading the jury substantially outweighs any legitimate basis of such evidence. *See* Fed. R. Evid. 403. The Court should therefore disallow the government's use of this evidence.

## CONCLUSION

For the foregoing reasons, and for any other reasons this Court may determine at the pretrial conference, Ms. Reid respectfully requests that the Court deny the government's motion.

                                                  Respectfully submitted,

                                                  A.J. KRAMER
                                                  FEDERAL PUBLIC DEFENDER

                                                  _____/s/_____
                                                  TEZIRA ABE
                                                  EUGENE OHM
                                                  Assistant Federal Public Defenders
                                                  625 Indiana Ave. N.W., Suite 550
                                                  Washington, D.C.  20004
                                                  (202) 208-7500