UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 25-CR-244 (SLS) |
| | : | |
| SYDNEY LORI REID, | : | |
| | : | |
| Defendant. | : | |

### MOTION TO COMPEL *BRADY* EVIDENCE

Sydney Reid respectfully moves this Court to order the government to provide to the Defense exculpatory evidence, namely circumstances around statements made by Agent Eugenia Bates to the U.S. Attorney's Office about the alleged assault by Ms. Reid.

### Relevant Facts

The original complaint, ECF No. 1, makes no mention of Agent Bates's allegation that Ms. Reid attempted to "knee" her in the groin area. The Complaint alleged: "As REID was trying to get behind Officer Lang and impede the transfer of the second suspect by inserting herself between the second suspect and the agents, Officer Lang pushed REID against the wall and told her to stop. REID continued to struggle and fight with Officer Lang. Agent Bates came to Office Lang's assistance in trying to control REID. REID was flailing her arms and kicking and had to be pinned against a cement wall." ECF No. 1-1 at 1.

On October 8, 2025, the government made the following disclosure:

> October 7, 2025, the Government met with Special Agent Eugenia Bates. Agent Bates informed the Government that in the initial stages of the case, she was contacted by an agent who was assisting with drafting the complaint (she could not recall the agent's name). During that conversation, Agent Bates informed that agent that she believed that the Defendant engaged in assaultive behavior when she raised a knee at Agent Bates' groin area. The agent informed Agent Bates in substance that the complaint drafting had already concluded, so no further additions could be made at that time.

1

The Defense understood this disclosure to be Agent Bates' attempt to explain her prior inconsistent statement. In anticipation of being impeached by omission, Agent Bates' explanation was that she did indeed relate that Ms. Reid had "raised a knee at Agent Bates' groin" but that it wasn't recorded because the agent drafting the complaint had finished drafting the complaint. The Defense thus asked whether the agent who drafted the complaint (Special Agent Abdul Majeed) agreed with Agent Bates' representation, that she indeed mentioned the assault but that he declined to include it because he had already completed drafting the complaint.

The prosecution then replied that they had misstated that happened and that it was an Assistant U.S. Attorney, not an agent, who "she believed drafted the complaint." It continued, "Agent Bates said there was no disagreement from the AUSA that the Defendant engaged in assaultive behavior when she raised a knee at Agent Bates' groin."

The Defense again explained that it was not seeking Agent Bates' account but whether her account was corroborated by whomever it was that Agent Bates had spoken to. The Defense requested the name of the AUSA and whether the AUSA agreed that s/he had told Agent Bates that the facts could not be included in the complaint because the complaint had already been drafted.

The government replied, "Your requests regarding the name and AUSA's 'agreement' are not within the scope of our discovery obligations."

The government seemingly missed the point, so the defense tried again and explained: "It is thus entirely relevant, and frankly your obligation in determining whether you are presenting truthful testimony, to disclose whether the government (the AUSA) also agrees that she made

this claim in the interview during the complaint process. Because if the AUSA disputes this, it would be more evidence that Agent Bates was lying."

The government asserted that the statement of offense "doesn't require the recitation of every fact in the case" and that "[e]very AUSA who has looked at this case concurs with Agent Bates in her description that the defendant raised her knee at her."

Although the exchange continued, the government persisted in its refusal to reveal the identity of the AUSA who witnessed Agent Bates' prior inconsistent statement or whether the AUSA said that s/he heard Agent Bates discuss the knee action but did not include it in the complaint.

## Supplemental Facts for the Defense's Motion to Dismiss

At primary issue is a video possessed and viewed by Officer Liang and Officer Residovic, while Ms. Reid was being transported in their car. The government will allege that Officer Residovic had reviewed his text messages and discovered a "screenshot from Agent Residovic's phone showing the Instagram profile from which he viewed the video." This unambiguously contradicts the government's previous representation to the defense (that Agent Residovic was not sent the link previously – he was shown the video on another phone) and to the Court (Agent Residovic did not recall the identity of the account, and the Government did not have information as to the identity of the account because the link no longer went to a working page).

Upon review of the audio from the conversation within the car, the defense heard one of the officers mentioning receiving a text from an Officer Parodi. The defense has thus requested the texts messages, with time stamps from Officer Parodi, as well as Officer Liang and Officer Residovic. The defense explained multiple times to the government that the reason for this

3

request was to match up the audio from Ms. Reid's phone and the incoming texts to the time the defense believes Ms. Reid viewed the video at issue. The government has stated it will not disclose the text messages of Officer Parodi because the government does not intend to call him in its case. The remaining materials have also not yet been disclosed but the government has indicated a willingness to disclose them.

## Argument

Agent Bates and Officer Liang are the central witnesses in the government's case. The assault, that is, the alleged "kneeing" attempt is the criminal act at the focus of the government's case. Agent Bates, in the first official recording of her statement did not appear to mention the kneeing attempt. The government intends to rehabilitate her testimony with a claim that she actually made this statement to an Assistant U.S. Attorney, but that she was told that the statement would not be included in the complaint because it was too late. Whether that is true or not is information exclusively in the government's possession. They are required to produce it to the defense.

"Impeachment evidence… as well as exculpatory evidence, falls within the Brady rule." *United States v. Bagley*, 473 U.S. 667, 676 (1985). "Such evidence is "evidence favorable to an accused," *Brady*, 373 U.S., at 87, so that, if disclosed and used effectively, it may make the difference between conviction and acquittal. *Cf. Napue v. Illinois*, 360 U.S. 264, 269, ("The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend"). The Supreme Court has generally "disavowed any difference between exculpatory and impeachment evidence." *Kyles v. Whitley*, 514 U.S. 419, 433 (1995).

Where, like here, a witness' credibility is central to the case, the jury is entitled to know the evidence relevant to her credibility. *See Giglio v. United States*, 401 U.S. 150, 155 (1972). Impeachment evidence is important because "if disclosed and used effectively, it may make the difference between conviction and acquittal." *Bagley*, 473 U.S. at 676. In other words, "the jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence[.]" *Napue v. Illinois*, 360 U.S. 264, 269 (1959).

Agent Bates will be confronted about the omission of the alleged attempted knee to the groin in the complaint, for which she was the primary source. The government has disclosed that she now claims that there was no omission. The defense request is simply whether the prosecutor with whom she was meeting, corroborates that account. Yet the government puzzlingly refuses to answer this most basic question. Its failure to do so handicaps the defense from properly confronting Agent Bates, the complainant to the assault charge and, along with Officer Liang, the most important witness in the government's case.

## Conclusion

The fairness of any trial depends on the government's respect and adherence to its disclosure obligations. Its continued refusal to do so violates Ms. Reid's Due Process rights. The defense therefore respectfully requests a Court Order compelling the government to disclose: 1) the name of the Assistant U.S. Attorney who met with Agent Bates; 2) whether that prosecutor confirms Agent Bates' self-serving account about her meeting regarding the complaint; 3) the availability of that AUSA at trial if the prosecutor contradicts Agent Bates' account; and 4) the requested text messages and their time stamps from Officers Parodi, Liang and Agent Residovic.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Tezira Abe
Eugene Ohm
Assistant Federal Public Defenders
625 Indiana Ave., N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500